UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NICOLE M. E. o/b/o E.F.,

                               **Plaintiff,**

   vs.                                                     6:21-cv-337
                                                                           (MAD/DJS)

**KILOLO KIJAKAZI,** *Acting Commissioner of Social Security*,

                               **Defendant.**
_____

**APPEARANCES:**                                    **OF COUNSEL:**

**THE DEHAAN LAW FIRM P.C.**            **JOHN W. DEHAAN, ESQ.**
300 Rabro Drive, Suite 101
Hauppauge, New York 11788
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **CHRISTOPHER LEWIS POTTER, ESQ.**
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

     Plaintiff applied for Supplemental Security Income ("SSI") on behalf of her minor son, E.F. ("Claimant"), under Title XVI of the Social Security Act on August 21, 2018. *See* Administrative Transcript ("Tr.") at 13. Plaintiff alleges that Claimant has a disability onset date of January 1, 2012, due to attention deficit hyperactivity disorder ("ADHD"). *Id.* at 129-134. Plaintiff's claim was initially denied, and she requested a hearing before an administrative law judge ("ALJ"). A video hearing was held on October 24, 2019, before ALJ Matthew Malfa, who subsequently denied Plaintiff's application on November 20, 2019. *See id.* at 9-24. Plaintiff filed

a request for review by the Appeals Council, which was denied on January 27, 2021, thus making the ALJ's decision the final determination of the Commissioner of Social Security. *See id.* at 1-6. Plaintiff commenced this action on March 23, 2021, seeking review of the decision by the Commissioner to deny Plaintiff's application for SSI. *See* Dkt. No. 1. Presently before the Court are the parties' cross motions for judgment on the pleadings. *See* Dkt. Nos. 10, 17.

## II. BACKGROUND

Claimant was diagnosed with ADHD on June 16, 2014, by Andy Lopez Williams, Ph.D, and Carrie Corby, MSW. *See* Tr. at 238. Claimant was administered an Integrated Visual & Auditory Continuous Performance Test, Plus, which assesses areas of executive functioning related to ADHD. *Id.* Claimant's response in the visual domain was deemed invalid due to random responses, and in the auditory domain, Claimant exhibited average attention but extremely low response control. *Id.* Two other tests, WISC-IV and WJ-III were also administered to evaluate working memory and processing speed. *Id.* Claimant exhibited "low average to borderline working memory abilities, with a more pronounced deficit seen in his verbal working memory." *Id.* Dr. Lopez-Williams and Ms. Corby recommended cognitive-behavior therapy, school intervention, and ADHD medication. *Id.* at 239.

From January13 through April 30, 2015, Claimant was treated by Vijayakuma Komareth, M.D., a board-certified psychiatrist, at the Faxton-St. Luke's Behavioral Health Clinic for ADHD and educational problems. *Id.* at 349. Dr. Komareth reported as follows:

> Client has past diagnosis of ADHD and Oppositional Defiant
> Disorder. The client has some behavior issues in school. Client has
> difficulty sitting still in his seat, he has difficulty focusing in school.
> The client has been reported to be staring out the window. Client
> has difficulty with complying with school rules. On his report
> cards, it is reported that he is disruptive. The client is not
> aggressive with other kids or adults. He has difficulty with not
> talking throughout class. The client's mom reports that at one point

> the client was drawing pictures that had "blood and gore" in them because he had watched horror movies.  However, he has stopped doing that.  Client has some issues with following directives from authority figures and focusing.

*Id.*  Claimant attended two screening visits and one treatment session with Dr. Komareth.  *Id.* at 351-52.  Claimant was the discharged with the same diagnosis.  *Id.* at 350.

On September 14, 2017, Claimant was seen by Andrew Milone, PA, his primary care provider, to monitor his ADHD.  *Id.* at 282-87.  PA Milone noted a history of anger issues and that Claimant "does not want to do anything, does not like school." *Id*. at 283.  PA Milone also reported that Claimant's ADHD medication, Guanfacine, was working well and school was "going fine."  *Id.*  On December 11, 2017, PA Milone noted that Claimant was "crying every day, fights with brother every day." *Id*. at 277-81.  He also reported, "behavior issues at school …. Problems falling asleep.  Yells at mom all the time.  He will hit himself in the head if he doesn't get what he wants."  *Id.* at 278.  PA Milone increased Claimant's Guanfacine dosage, recommended additional therapy, and prescribed Melatonin for insomnia.  *Id*. at 279-80.  On April 9, 2018, PA Milone noted similar behavioral problems and insomnia.  *Id.* at 272-76.  PA Milone increased the Guanfacine and Melatonin dosages.  *Id*. at 275.

On May 4, 2018, PA Milone reported that Claimant "states when he takes am meds, falls asleep in class, eyes get heavy, not really listening due to being tired ….  He does not take the morning dose then he does not get sleepy.  He still finds himself day dreaming, but he is at least able to redirect his attention once he realizes.  Grades have not been great lately.  Still having trouble sleeping as well."  *Id.* at 268.  Accordingly, PA Milone stopped Claimant's Guanfacine and instead prescribed Strattera.  *Id.* at 269-70.  On July 17, 2018, PA Milone switched Claimant's ADHD medication again.  *Id*. at 265.  PA Milone reported "that when he is not on medication he acts crazy or [wild] or some similar description.  He is very physically active and displays

3

difficulty concentrating. Unfortunately there are behavioral issues as well such as beating up on his younger brother, yelling." *Id*. Ethan's grandmother reported that the Guanfacine helped but made him drowsy, and the Strattera "did not do much." *Id*. PA Milone therefore changed Claimant's ADHD medication to Concerta. *Id*. at 265. On August 15, 2018, PA Milone noted that Claimant was tolerating the Concerta well, was less argumentative, and having fewer fights with his brother. *Id*. at 257. On October 2, 2018, PA Milone again noted that Claimant was improved on the Concerta. *Id*. at 252.

On December 21, 2018 and March 20, 2019, PA Milone noted difficulties with school. PA Milone noted that Claimant's mother reported that Claimant "continues to struggle with school. Some of this clearly is volitional but a large portion I believe is out of his control. He brought his most recent progress report which shows [him] failing 1 of at least 3 subjects, 1 of them with a grade of 6 (not 16 and not 60, but 6). He often does not do his homework and when he does he often does not turn it in." *Id.* at 338. PA Milone discontinued the Concerta and prescribed Focalin XR. *Id.* at 340-41. On April 3 and April 17, 2019, PA Milone increased the dosage of Focalin XR. *Id.* at 330, 335. And on May 7, 2019, Claimant reported some improvement and PA Milone continued the higher dosage. *Id*. at 324-26.

On October 18, 2019, PA Milone completed a Functional Equivalence Assessment. *Id.* at 356-59. He opined that "I think there is a good prognosis if given consistent, long-term therapy supplemented with judicious use of medication." *Id.* at 359. He also opined that Claimant has a "Marked Limitation" in Domain 1 – Acquiring and Using Information. *Id.* at 356. PA Milone elaborated, "Difficulty following instructions, especially those with multiple steps. Difficulty with comprehension of both written and spoken information, as well as difficulty expressing his

4

thoughts in writing. Easily distracted." *Id*. PA Milone also opined that Claimant has a "Marked Limitation" in Domain 2 – Attending and Completing Tasks. *Id.* at 357.

On October 22, 2018, Dante Alexander, Psy.D., performed a consultative examination. *Id.* at 292-95. On "Current Functioning," Dr. Alexander noted "[a]ttention and concentration, and hyperactivity symptoms: Fails to pay attention to details, difficulty sustaining attention in tasks or play, fails to follow through on instructions or finish work, disorganized, easily distracted, often fidgets or squirms, excessive talking, and difficulty waiting turn to talk …. *Id.* at 292. On "Mental Status Examination," Dr. Alexander reported that attention and concentration were "mildly impaired due to limited math ability," and "[i]ntellectual functioning was below average." *Id.* at 293-94. Dr. Alexander opined that Claimant had only "mild limitations" to sustain concentration and complete age-appropriate tasks, and to learn in accordance to cognitive function. *Id*. at 294.

On October 29, 2018, state agency reviewing pediatrician Dr. Stouter reviewed Claimant's records. *Id*. at 85. Dr. Stouter concluded that claimant had less than marked limitations in the domains of acquiring and using information and attending and completing tasks and no limitations in the remaining domains. *Id.* at 86. Therefore, Dr. Souter found that Claimant's medically determinable impairments do not meet, medically equal, or functionally equal a listed impairment. *Id*. at 87.

Claimant's school psychologist, Matthew Boliver, MA, CAS, preformed a triennial evaluation on September 25 and 28, 2017. *Id*. at 243-48. Mr. Boliver reported as follows:

> Ethan's records indicate that he was referred to Dr. Andy Lopez Williams of ADHD and Autism Psychological Services and Advocacy in New York Mills, NY in the spring of 2014. It was noted that this referral was initiated due to concerns about disruptive behaviors, aggression, impulsivity, hyperactivity, noncompliance, social difficulties, adjustment problems and

5

>difficulty focusing. Based on their evaluation, he was diagnosed with ADHD-Combine Type, Oppositional Defiant Disorder, Mood Disorder NOS, and Cognitive Disorder NOS. It was recommended that the school utilize a Daily Report Card so that Ethan's teachers might evaluate him on his behavior, homework completion, and attendance. This information was to be shared with his parents on a daily basis. Utilization of a long acting stimulant medication to treat ADHD symptoms was recommended.

*Id.* at 243. Mr. Boliver administered the Wechsler Abbreviated Scale Intelligence Test (2nd Ed.). *Id.* at 245, 248. Mr. Boliver reported that Ethan had a Verbal Comprehension Index Score of 88, which correlated to the average/low average range; a Perceptual Reasoning Index Score of 82, which is in the average/borderline range; and a Full Scale IQ score of 83, which is in the low average/borderline range. *Id.* at 245. Mr. Boliver also administered the Kaufman Test of Educational Achievement-Third Edition, Brief Form. Claimant's Academic Skills Battery Composite Score was 76, which is in the below average/low range. *Id.* Claimant's teachers also completed a BASC-3, TRS Form to assess his behavior in school. Based on these, Mr. Boliver determined that Claimant was "at risk" for attention problems, learning problems, adaptability, study skills, functional communication, executive functioning, and resiliency. *Id.* at 246, 248.

Claimant's seventh and eighth grade teachers, in October 2017 and October 2018, respectively, filled out individualized education program questionnaires. *See id.* at 138, 184. On October 19, 2018, Claimant's special education teacher, Bill Hornig, completed a Teacher Questionnaire at the request of Social Security. *Id.* at 166. Mr. Hornig opined that Claimant has "a serious problem" understanding school and content vocabulary; reading and comprehending written material; comprehending and doing math problems; understanding and participating in class discussions; providing organized oral explanations and adequate descriptions; expressing ideas in written form; learning new material; recalling and applying previously learned material; and applying problem solving skills in class discussion. *Id*. at 167. He also stated Claimant has a

"serious problem" focusing, carrying out multi-step instructions; changing from one activity to another; working without distracting self or others; and working at a reasonable pace/finishing on time. *Id*. at 168. The teacher further stated that Claimant has "an obvious problem" paying attention when spoken to directly and refocusing to task when necessary; and "a slight problem" carrying out single step instructions. *Id.* at 168.

### III. DISCUSSION

**A.   Standard of Review**

The Social Security Act authorizes payment of disability insurance benefits to individuals with "disabilities." An individual under the age of eighteen is disabled, and thus eligible for SSI, if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). That definitional provision goes on to exclude from coverage any "individual under the age of 18 who engages in substantial gainful activity …." 42 U.S.C. § 1382c(a)(3)(C)(ii).

> Regulations enacted by the Social Security Administration set forth a three-step analysis for evaluating whether a child's impairment meets this definition of disability: First, the ALJ considers whether the child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations." *Id.* § 416.924(c). Finally, if the ALJ finds a severe impairment, he or she must then consider whether the impairment "medically equals" or "functionally equals" a disability listed in the regulatory "Listing of Impairments." *Id.* § 416.924(c)-(d).

*Miller v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 384, 386 (2d Cir. 2010) (quotation omitted).

Equivalence to a Listing can be either medical or functional. 20 C.F.R. § 416.924(d); *Kittles ex rel. Lawton v. Barnhart*, 245 F. Supp. 2d 479, 488 (E.D.N.Y. 2003). If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability, and the twelve-month durational requirement is satisfied, the child will be deemed disabled. 20 C.F.R. § 416.924(d)(1); *see also Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004).

Under the Social Security Regulations (the "Regulations"), analysis of functionality is performed by consideration of how a claimant functions in six areas, which are denominated as "domains," and described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those prescribed domains include: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for [oneself]; and (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1).

A finding of disability is warranted if a "marked" limitation, defined as when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities," 20 C.F.R. § 416.926a(e)(2)(i), is found in two of the listed domains. 20 C.F.R. § 416.926a(a). Functional equivalence also exists in the event of a finding of an "extreme" limitation, meaning "more than marked," representing an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities," and this rating is only "give[n] to the worst limitations." 20 C.F.R. § 416.926a(e)(3)(i); *see also Pollard*, 377 F.3d at 190.

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a claimant is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court

must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)) (other citations omitted).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

**B.     The ALJ's Decision**

Using the three-step disability evaluation, the ALJ found at step one that Claimant has not engaged in any substantial gainful activity since August 21, 2018, the application date.  Tr. at 13. At step two, the ALJ concluded that Claimant has a severe impairment consisting of ADHD and oppositional defiant disorder ("ODD").  *Id*.  At the third step of analysis, the ALJ found that Claimant does not have an impairment or combination of impairments that meets, medically equals, or functionally equals any of the listed, presumptively disabling conditions set forth in Appendix 1 of the Regulations.  *See id.*  The ALJ specifically considered whether Claimant met

9

or medically equaled Listing112.11, but concluded he did not have an extreme limitation in one, or marked limitation in two, of the areas of mental functioning in Listing 112.11(B). *Id.* at 13-14. ALJ Malfa found that Claimant had a marked limitation in understanding, remembering, or applying information; moderate limitations in interacting with others and concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing himself. *Id.* at 14. ALJ Malfa then determined that, "[t]he claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 C.F.R. [§§] 416.924(d) and 416.926a)." *Id.* at 14. Specifically, ALJ Malfa found that Claimant has a marked limitation in acquiring and using information; less than marked limitations in attending and completing tasks and interacting and relating with others; and no limitations in moving about and manipulating objects, caring for himself, and in health and physical well-being. *Id.* at 14-15. After reviewing the record, the ALJ concluded that Claimant is not disabled and denied the claim. *Id.* at 21.

**C.    Analysis**

Plaintiff argues that ALJ Malfa applied the incorrect standard, improperly weighed the evidence, and that the record establishes that Claimant's impairments are functionally equivalent to Listing 112.11. The Court disagrees and finds that ALJ Malfa properly weighed the medical source opinions, and that substantial evidence supports the finding that Claimant's impairments did not meet or equal a listed impairment. ALJ Malfa relied on the expert assessments of Dr. Alexander and Dr. Stouter. He also relied on Claimant's mother's testimony, Claimant's mental status examinations, and a September 2017 evaluation by Mr. Boliver.

First, Plaintiff argues that ALJ Malfa improperly substituted his own layperson assessment of the evidence for the evidence of the medical and educational experts. *See* Dkt. No. 10 at 23-26. Plaintiff states that ALJ Malfa erred by considering medical and educational opinion only "to the

extent consistent" with his own findings. *Id*. at 24-25. Plaintiff argues that "[t]his constituted an 'impermissible interpretation of raw medical data,' that requires reversal." *Id.* at 25 (quoting *Sherry v. Berryhill*, No. 1:17CV01102, 2019 WL 441597, *7 (W.D.N.Y. Feb. 5, 2019)).

Plaintiff applied for benefits on or after March 27, 2017, which is after the effective date of 20 C.F.R. § 416.920c(a), altering the treating physician rule. Now, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ... including those from your medical sources." *Id.* Instead, the ALJ is required to explain how he considered the factors of supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Here, ALJ Malfa followed that standard and extensively evaluated the persuasiveness of the medical and educational professionals' opinions. *See* Tr. at 18-20. ALJ Malfa's conclusory remarks at the end of an extensive evaluation of the medical and educational professionals' opinions limiting the persuasiveness "to the extent consistent with the findings herein" is not evidence that ALJ Malfa substituted his own opinion.

Plaintiff relies on *Collins v. Comm'r of Soc. Sec.*, No. 20-CV-4693, 2021 WL 3054964, *5 (E.D.N.Y. July 20, 2021), to argue that ALJ Malfa's reasoning is circular; that "ALJ Malfa found the persuasiveness of each medical and educational professional's opinion hinged upon how much it comported with his own interpretation of the evidence." Dkt. No. 10 at 25. The court in *Collins* stated as follows:

> At times, the decision in this case reads as if the ALJ came to an RFC determination herself before evaluating any of the evidence. For example, the ALJ evaluated evidence based on its "consisten[cy] with my residual functional capacity assessment." This rationale strikes me as circular, as I don't see how the ALJ can reject an opinion as consistent or inconsistent with her own assessment when she should not be making her own assessment until she has considered that opinion.

11

*Collins*, 2021 WL 3054964, at *5 (alteration in original).  First, the court in *Collins* did not solely rely on these passing statements for remand.  The court also found that the "ALJ improperly rejected the opinions of plaintiff's treating physicians as inconsistent with the record based on cherry-picked evidence when, in fact, the opinions were largely consistent with each other, medical evidence in the record, and plaintiff's own testimony."  *Id*.  Second, ALJ Malfa did not discount the medical and educational professional's opinions because they did not comport with his own interpretation of the underlying data.  Rather, he had first extensively analyzed the opinions for supportability and consistency as required by 20 C.F.R. § 416.920c(b)(2) and 20 C.F.R. § 416.920c(c).  After performing that analysis, in conclusion, he stated that the opinions remained persuasive to the extent it is consistent with the remainder of the opinion.  At no point did ALJ Malfa discount an opinion solely because it did not comport with his own ultimate conclusion, as the district court found the ALJ had done in *Collins*.  Accordingly, the Court finds that ALJ Malfa did not apply the incorrect standard or substitute his own opinion for those of the medical and educational professionals.

     Next, Plaintiff argues that ALJ Malfa improperly evaluated the opinion of PA Milone.  ALJ Malfa found that PA Milone's opinion was "inconsistent with the substantial evidence of record, including the opinions of Drs. Alexander and Stouter and the reports from the claimant's teachers indicating meaningful, but not profound, deficits in the domain of attending and completing tasks." Tr. at 20.  Plaintiff argues that ALJ Malfa relied on Drs. Alexander and Stouter's opinions to discount PA Milone's, but had also found their opinions to be inconsistent with the medical record.  *See* Dkt. No. 10 at 29.  Plaintiff contends that if ALJ Malfa had properly evaluated the opinion evidence, "he would have been forced to concede that PA Milone's assessment was very persuasive," and Claimant is disabled.  *Id*.

12

The Court disagrees.  Dr. Alexander opined that Claimant had only mild limitation in sustaining concentration and completing age-appropriate tasks, and mild limitation in learning in accordance to cognitive function.  Tr. at 294.  ALJ Malfa concluded that Dr. Alexander's opinion was "generally persuasive," but that Claimant's treatment notes and academic records actually "supported a somewhat higher degree of restriction than assessed by" Dr. Alexander.  *Id.* at 18.  Plaintiff first argues that, because ALJ Malfa found a different level of restriction than Dr. Alexander, it was improper to use Dr. Alexander's opinion to discredit PA Milone's.  It has been repeatedly recognized that an ALJ may properly depart from an opinion in a manner that favors the claimant.  *Tammy Lynn B. v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 184, 195 (N.D.N.Y. 2019); *Vicky M. v. Comm'r of Soc. Sec.*, No. 8:17-cv-521, 2018 WL 4119112, *9 (N.D.N.Y. Aug. 28, 2018).  Moreover, "the ALJ's resolving such conflicts in the medical evidence is not interpreting raw medical data or substituting his own lay opinion for that of a medical professional."  *Terri G. v. Comm'r of Soc. Sec.*, No. 3:18-CV-0066, 2019 WL 1318074, *9 (N.D.N.Y. Mar. 22, 2019).

ALJ Malfa found that Dr. Alexander's opinion was supported by his own examination and was "fairly consistent with the substantial evidence of record."  Tr. at 18.  The ALJ was not required to adopt Dr. Alexander's opinion in its entirety.  Plaintiff is incorrect in asserting that Dr. Alexander's opinion was "not supported by or consistent with" the record simply because the ALJ found the record to support a more restrictive assessment.  An ALJ may properly "credit those portions of a consultative examiner's opinion which the ALJ finds supported by substantial evidence of record and reject portions which are not so supported."  *Viteritti v. Colvin*, No. 14-6760, 2016 WL 4385917, *11 (E.D.N.Y. Aug. 17, 2016) (citing *Pellam v. Astrue*, 508 Fed. Appx. 87, 89 (2d Cir. 2013)).

13

Plaintiff also suggests it was improper to rely on Dr. Alexander's opinion because he only examined Claimant once. "It is well-settled that the opinion of a consultative examiner who only examined a patient once can constitute substantial evidence in support of the ALJ's determination if supported by the record." *Teddy N. v. Berryhill*, No. 8:18-CV-234, 2019 WL 1429519, *3 (N.D.N.Y. Mar. 29, 2019). The ALJ's decision that Dr. Alexander's opinion was generally persuasive is support by substantial evidence.

Plaintiff makes similar arguments regarding the opinion of Dr. Stouter. In October 2018, Dr. Stouter reviewed Claimant's record and concluded that Claimant had less than marked limitations in the domains of acquiring and using information and attending and completing tasks and no limitations in the remaining domains. Tr. at 86-87. ALJ Malfa found that the record supported a higher degree of limitation, "particularly in the domains of acquiring and using information and interacting and relating with others," than determined by Dr. Stouter. *Id.* at 18-19. ALJ Malfa, accordingly, concluded that Dr. Stouter's assessment was only "partially persuasive," as it was generally consistent with the substantial evidence of record that indicated Claimant had "meaningful, but not profound, functional deficits." *Id.* at 19.

An ALJ may find a state agency physician's opinion to be "partially persuasive" without dismissing their findings entirely. *See Dowling v. Comm'r of Soc. Sec.*, No. 5:14-CV-0786, 2015 WL 5512408, *12 (N.D.N.Y. Sept. 15, 2015); *Thogode v. Colvin*, No. 3:14-1051, 2015 WL 5158733, *9 (N.D.N.Y. Sept. 2, 2015). A state agency physician's opinion is not deemed "inconsistent with the record" because the ALJ concluded a more restrictive assessment was appropriate. Dr. Stouter's findings were supported with reasonable explanations and "generally consistent with the substantial evidence of record." Tr. at 19.

Plaintiff also argues that Dr. Stouter's opinion is not substantial evidence because she did not have the opportunity to review the entire record. *See* Dkt. No. 10 at 31. Dr. Stouter conducted her examination in October 2018 and therefore did not review Claimant's teachers' February 2019 questionnaire and PA Milone's October 2019 assessment. The Court finds that the additional medical and educational records were not materially different than PA Milone's and Claimant's teachers' October 2018 assessment on which Dr. Stouter relied. *See Camille v. Colvin*, 652 Fed. Appx. 25, 28 n.4 (2d Cir. 2016) (holding that the ALJ could rely on a medical opinion, despite it being rendered prior to subsequent records from the same sources, where additional notes post-dating the opinion were not materially different from those pre-dating it). There is no "unqualified rule" that a medical opinion is superseded by additional material in the record. *Id.*

Dr. Stouter reviewed Claimant's teachers' October 2018 questionnaire, which reported that Claimant has "a serious problem focusing long enough to finish" an activity, changing activities, completing work accurately, working without distracting himself or others, and that he "needs support with assignments and reminders to focus." Tr. at 86. Claimant's teachers' October 2019 questionnaire reported similar sentiments. PA Milone's October 2019 assessment similarly does not detail any stark changes in Claimant's ability to concentrate or follow instruction. *Id.* at 356-57. Accordingly, the ALJ properly weighed Dr. Stouter's opinion.

Plaintiff further contends that ALJ Malfa did not properly evaluate the opinion of PA Milone. ALJ Malfa considered PA Milone's October 2019 opinion that Claimant had marked limitations in the domains of acquiring and using information as well as attending and completing tasks. *See* Tr. at 19-20 (citing Tr. at 356-359). ALJ Malfa also acknowledged PA Milone's opinion that Claimant was easily distracted and had difficulty following instructions, focusing long enough to complete tasks on time, changing between activities without being disruptive, and

15

working without distracting himself or others. *Id.* at 20 (citing *Id.* at 356-57)). ALJ Malfa, however, found PA Milone's opinion to be "only somewhat persuasive" because it was inconsistent with the substantial evidence of record, "including the opinions of Drs. Alexander and Stouter as well as the reports from [Claimant's] teachers[.]" *Id.* at 20.

The Court finds that ALJ Malfa properly evaluated the persuasiveness of PA Milone's opinion in light of the key factors of supportability and consistency as required by the regulations. *See* 20 C.F.R. § 416.920c(b)(2). ALJ Malfa extensively supported his determination that PA Milone's opinion was "only somewhat persuasive." Tr. at 20. For example, ALJ Malfa noted that Claimant was alert and cooperative, displayed normal mood and affect, and had normal span and concentration, and was acting perfectly fine during an April 2018 examination. *Id.* at 17 (citing *id.* at 272-76). And in October 2018, Claimant informed PA Milone that he was tolerating his Concerta dosage well and that it "definitely makes a difference" in his ability to concentrate. *Id.* PA Milone reported that a mental examination revealed alert and cooperative behavior, normal mood and affect, and normal attention span and concentration. *Id.*

Accordingly, substantial evidence supports ALJ Malfa's analysis. The Court will not reweigh the evidence. *See e.g.*, *Walsh ex rel. S.J.W. v. Comm'r of Soc. Sec.*, No. 1:16-cv-1413, 2018 WL 1229827, *5 (N.D.N.Y. Mar. 9, 2018) ("It is not the function of this Court to re-weigh evidence ….") (citing cases). Here, Plaintiff "is essentially arguing that the evidence in the record supports her contention[s]. However, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence of record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record." *Z.J.F.*

*by Conkling v. Comm'r of Soc. Sec.*, No. 6:16-CV-1397, 2018 WL 1115516, *6 (N.D.N.Y. Feb. 27, 2018).

The Court also finds that substantial evidence supports ALJ Malfa's finding that Claimant's impairments did not meet or equal a listed impairment. ALJ Malfa found that Claimant's impairments did not meet listing 112.11. Tr. at 13-24. In reaching this conclusion, ALJ Malfa properly relied on Dr. Alexander's and Dr. Stouter's medical opinions, as discussed above. In order to satisfy the paragraph B criteria, a child must have an extreme limitation in one, or marked limitation of two, of the following areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. pt. 404, subpt. P, App. 1, § 112.11(b) (Mar. 27, 2017). ALJ Malfa found that claimant had a marked limitation in his ability to understand, remember, or apply information; moderate limitation in interacting with others; moderate limitation in his ability to concentrate, persist, or maintain pace; and mild limitation in adapting or managing himself. Tr. at 13-14. ALJ Malfa's determination is supported by substantial evidence and, contrary to Plaintiff's contentions, the evidence does not compel the conclusion that Claimant had a marked limitation in his ability to concentrate, persist, or maintain pace.

The area of concentrating, persisting, and maintaining pace refers to the abilities to focus attention on activities and stay on task age-appropriately. 20 C.F.R. pt. 404, subpt. P, App. 1, § 112.00(E)(3). In finding Claimant had no more than moderate limitations in this area, ALJ Malfa relied on treatment notes documenting his ability to maintain focus, the assessments of the consultative examiner and state agency physician, and his improved ability to concentrate and pay attention while adhering to his medication regimen. Tr. at 13-20; *see* 20 C.F.R. §

416.924a(b)(9)(i) (SSA "will consider the effects of medication on [a child's] symptoms . . . and functioning," including whether "any of his functional limitations . . . persist, even if there is improvement from the medications").  ALJ Malfa also relied on Dr. Stouter's and Mr. Boliver's opinions, which supported a moderate limitation finding.  *See* Tr. at 16-19.  ALJ Malfa furhter noted Claimant's longitudinal record of improvement when consistently abiding by his medical regimen.  *Id.* at 17.  Accordingly, substantial evidence supports ALJ Malfa's conclusion that Claimant has a "moderate" rather than "marked" limitation in his ability to concentrate, persist, or maintain pace.

Lastly, substantial evidence also exists to support ALJ Malfa's determination that Claimant's impairments do not functionally equal listing 112.11.  "Functional equivalency" may be measured in a number of ways, most specifically in "domains" such as (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  To be functionally equivalent to a listing, a child's impairments "must result in [either] 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain."  20 C.F.R. § 416.926a(a).

Plaintiff argues that Claimant has marked limitations in the following domains: (1) acquiring and using information; and (2) attending and completing tasks.  Alternatively, Plaintiff contends that the ALJ should have concluded that Claimant has an extreme limitation in acquiring and using information.  Substantial evidence supports ALJ Malfa's determination regarding those domains.

Upon mental status examination in October 2018, Dr. Alexander observed below average intellectual functioning and mildly impaired attention and concertation, but otherwise grossly

unremarkable findings, including coherent and goal-directed thought processes, euthymic mood, intact memory, and appropriate insight and judgment. Tr. at 18. Dr. Alexander noted only mild limitations to sustaining concentration and completing age-appropriate tasks and mild limitation to learning in accordance to cognitive functioning. *Id.* at 294. Dr. Stouter similarly assessed a less than marked limitation in attending and completing tasks. *Id.* at 86. And Claimant's school psychologist evaluation further supported this finding. Mr. Boliver reported that Claimant "seemed appropriately focused on the tasks," "at no time exhibiting elevated activity levels during testing." *Id.* at 244. He added that in the school setting, "[Claimant] was not observed to be hyperactive, noncompliant, aggressive, or as having social difficulties." *Id.* at 246.

Substantial evidence also supports ALJ Malfa's marked, rather than extreme, limitation finding in acquiring and using information. In finding that Claimant had marked limitation in this domain, ALJ Malfa wrote:

> It is recognized that the claimant has had a significant degree of limitation in the domain of acquiring and using information, as evidenced by his academic struggles and need for supportive educational services. However, intelligence testing does not suggest such difficulties are due to profound cognitive deficits, and some of the claiman's acknowledged activities, including playing video games, knowing how to perform household chores when motivated to do so, and being able to prepare simple meals, indicate the claimant is not extremely limited in his capacity to learn and use what he has learned.

Tr. at 20. ALJ Malfa relied on the medical and education evidence discussed above to reach this conclusion. ALJ Malfa's determination is supported by Dr. Alexander's opinion, Dr. Stouter's opinion, teacher questionnaires, and positive notes from PA Milone regarding increased dosage of Focalin.

Plaintiff's attempt to overcome this evidence is impermissibly asking this Court to reweigh the evidence. *See Walsh*, 2018 WL 1229827, at *5 (citing cases). Substantial evidence supports

ALJ Malfa's decision, which fully considered and weighed the medical and educational evidence of record.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the decision denying benefits is **AFFIRMED**; and the Court further

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that the Clerk of Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 18, 2022
       Albany, New York

Mae A. D'Agostino
U.S. District Judge